**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **DONISE WILKEY,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:16-CV-3486-L |
| § | |
| **UNITED PARCEL SERVICE, INC.,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant United Parcel Service, Inc.'s Motion for Summary Judgment (Doc. 17), filed November 17, 2017. After careful consideration of the motion, response, reply, appendixes, record, and applicable law, the court **grants** Defendant United Parcel Service, Inc.'s Motion for Summary Judgment (Doc. 17).

### I. Procedural and Factual Background

Plaintiff Donise Wilkey ("Plaintiff" or "Wilkey") brings this action against Defendant United Parcel Service, Inc. ("Defendant" or "UPS"), alleging age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C §621 *et seq*.[1] Wilkey contends that UPS unlawfully discriminated against her on the basis of her age when it terminated her from her position as a Day Sort Supervisor on March 25, 2014. She seeks lost earnings and benefits,

---

[1] In addition to the ADEA, Wilkey alleges she is invoking the court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. *See* Pl.'s Compl. ¶ 1. Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As Wilkey is only alleging employment discrimination based on her age, Title VII cannot serve as a basis for this court's jurisdiction. Subject matter jurisdiction in this case is pursuant to 28 U.S.C. § 1331 (federal question) and the ADEA.

**Memorandum Opinion and Order - Page 1**

compensatory damages, liquidated damages, reinstatement to her former position of employment, prejudgment interest, attorney's fees, and costs. UPS moves for summary judgment, arguing that Wilkey has failed to raise a genuine dispute of material fact that her age (55) was a "but for" cause of her termination. The court now sets forth the facts in accordance with the standard in Section II of this opinion.

### A. Wilkey's Termination

In 1991, UPS hired Wilkey to work at its Mesquite, Texas facility. Although she worked in several positions over the years, she was last employed as a full-time Day Sort Supervisor. In this position, she supervised approximately seventy employees who sorted UPS packages in preparation for placement on the delivery truck. Following an investigation, UPS terminated Wilkey on March 24, 2014, for dishonesty in violation of company policy after she instructed a subordinate to falsify records. At the time of her termination, Wilkey was fifty-five years old. Wilkey acknowledges that she instructed her subordinate to falsify records in violation of company policy. She contends, however, that UPS selectively enforced its policies to the detriment of older employees and unlawfully terminated her because of her age.

### B. UPS's Integrity Policy

UPS has a written "Integrity Policy," which requires its employees to conduct their jobs with honesty and integrity. The Integrity Policy is contained in UPS's Policy Book and its Code of Business Conduct. Wilkey received copies of both.

Page one of UPS's Policy Book states "Integrity—It is the core of who we are and all we do." Def.'s Summ. J. App. 31.

The Policy Book further provides:

WE INSIST ON INTEGRITY IN OUR PEOPLE.

> We understand that integrity is fundamental to how we run our business and essential to maintaining compliance with our policies and legal requirements. We provide an atmosphere in which our people can perform their jobs in an ethical manner. We present our company honestly to employees and, in turn, we expect them to be honest with us.
>
> We expect honesty from our people in all their duties, including the handling of money, property, information assets, and the preparation and approval of all reports and records.
>
> We also expect our people to be honest in their assessment of themselves, such as the time and commitment they give to their job performance, their dealings with others, or their evaluation of their own contributions or the contributions of others.
>
> For our company to be known for its integrity, each one of us must meet these high standards.

*Id.* at 38.

> The Code of Business Conduct provides, in relevant part:
>
> OUR COMMITMENT TO INTEGRITY
>
> UPS has a long tradition of transforming and adapting to the needs of our customers, but our commitment to integrity remains steadfast. We remain committed to a set of beliefs that guided our founders and their successors, and currently guides employees and representatives of UPS.
>
> \*\*\*
>
> This requires us to conduct business fairly, honestly, and ethically.
>
> \*\*\*
>
> A commitment to integrity is about creating a climate for continued success. It is about creating an environment where people can make good decisions. It is about doing the right thing in every business situation. By using good judgment and respecting others, UPS's commitment to integrity will endure.
>
> \*\*\*
>
> Compliance with our legal and ethical obligations is the responsibility of every UPS employee and representative, as is the responsibility to report potential violations of those obligations. Reporting may be accomplished directly through a discussion with a member of the management team or by using the UPS Help Line. Information about the UPS Help Line is available on UPSers.com.

*Id.* at 59.

> The Code of Business Conduct also addresses "Accuracy of Records and Reporting":
>
> In our jobs, many of us create or prepare some type of information, such as financial reports, accounting records, business plans, environmental reports, injury and accident reports, expense reports, and time cards. We have an obligation to keep accurate and truthful records, which must be prepared in accordance with our commitment to integrity and must comply with applicable accounting procedures and internal controls. People inside and outside UPS expect these reports to be reliable and properly maintained. These people include employees, shareowners, government representatives, auditors, and the communities in which we operate. No one may deviate from our commitment to manage information accurately and truthfully. Our records are maintained for required periods as defined in UPS Records Retention Schedule ("Schedule").
>
> Any person with knowledge of an improperly or inaccurately prepared business record is required to report this concern to the company. Additional information about reporting such a concern is available in the section of this Code titled "Reporting Concerns, Asking Questions, and Voicing Opinions."

*Id.* at 58.

### C. Falsification of Employee Engagement Surveys

As part of its efforts to improve its operations, UPS uses Employee Engagement Surveys ("Surveys") to give its employees an opportunity to provide feedback anonymously. Given the anonymous nature of the Surveys, "if a Survey is falsified . . . [,] it is impossible to go back into the data compilation and remove information from a falsified Survey and submit new information from the employee who was supposed to have completed the Survey." *Id.* at 10. Consequently, falsification "taint[s]" the entire Survey process and "leave[s] UPS with meaningless data." *Id.* Based on the information in the Surveys, work teams receive a performance grade.

In March 2014, Wilkey reported to Day Sort Managers Jeff Stucker ("Stucker") and Layne Blinco ("Blinco"). On March 4, 2014, Blinco informed the full-time Day Sort Supervisors that

they needed to have four or five employees per day complete the Survey so that the Surveys would be completed by the end-of-March deadline.

Rather than having the employees fill out the Surveys, which would require them to be taken off the sort line and delay the package sorting, Wilkey suggested to her fellow Day Sort Supervisors at a meeting, including Alvoid Lindsey ("Lindsey"), that she would instruct her subordinate, Tunisia Banks ("Banks"), to complete the Surveys for the employees. Lindsey agreed. On or about March 4, 2014, Wilkey provided Banks with a list of the Day Sort employees she supervised with instructions to complete the Surveys for the employees. Lindsey then provided Wilkey with the names of his employees. Wilkey also showed Banks how to log into the Survey website without being discovered.

### D. Investigation into Document Falsification

Although Banks completed the Surveys as instructed, she reported her concerns about falsifying the Surveys to Pat Griggs ("Griggs"), a full-time supervisor. Banks's concerns were referred to Hub Division Manager Jon Korn ("Korn"), who directed Rickey Joiner ("Joiner"), the Area Division Human Resources Manager, and Melissa Heinen ("Heinen"), the Security Manager, to investigate the incident. Heinen and Joiner interviewed numerous employees about the incident, including Wilkey, Lindsey, Banks, Jordan, Griggs, Blinco, and several employees whom Lindsey and Wilkey supervised.

During the investigation, Wilkey and Lindsey both admitted they instructed Banks to complete the Surveys for their employees and knew what they did was wrong. Heinen and Joiner prepared summaries of the witness interviews and submitted the investigation file to Korn. Korn, after consulting with the Director of Human Resources and the District Director of Security, determined that Wilkey and Lindsey had violated the Integrity Policy by falsifying company

records and involving a subordinate in the scheme, and that termination of their employment was the appropriate action.[2] On March 25, 2014, Wilkey met with Korn, Joiner, and Stucker, and was informed that she was being terminated for dishonesty in violation of the Integrity Policy. Lindsey was terminated for the same reason.

Wilkey subsequently participated in UPS's Employee Dispute Resolution Program ("Program"), available to nonunion employees to challenge employment decisions, including termination. As part of the Program, she requested a Peer Review Panel ("Panel"), which consisted of two members chosen by her and one member designated by UPS. Wilkey appeared in person before the Panel and also submitted a position statement. At no time did she claim she was terminated based on her age. The Panel upheld her termination for dishonesty after hearing all the evidence.

### E. Wilkey's EEOC Charge and This Lawsuit

On September 25, 2014, Wilkey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming age discrimination. The EEOC made a "no cause" finding, dismissed the charges, and issued Wilkey a right-to-sue letter on September 29, 2016. On December 22, 2016, Wilkey filed this lawsuit alleging age discrimination in violation of the ADEA. On November 17, 2017, UPS moved for summary judgment on Wilkey's age discrimination claim.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[2] Wilkey asserts that she was terminated by Korn, Joiner, and Stucker. *See* Pl.'s Summ. J. Br. 7. The record is undisputed, however, that the decision to terminate Wilkey was made by Korn, after consulting with the Director of Human Resources and the District Director of Security, and that Stucker was not consulted or involved with the decision to terminate Wilkey. Def.'s Summ. J. App. 7.

**Memorandum Opinion and Order - Page 6**

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions,

improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

### A. Legal Standard for an ADEA Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Unlike Title VII, the ADEA does not authorize an alleged mixed-motives age discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action. *Id.* at 176 (citations omitted); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation omitted). It is, therefore, insufficient under the ADEA for a plaintiff to show that age was a motivating factor. *Gross*, 557 U.S. at 175. "But-for" cause means the cause without which

the challenged adverse employment action or event would not have occurred. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citation omitted).

A plaintiff may prove employment discrimination with either direct or circumstantial evidence. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)). When, as here, there is no direct evidence of discrimination, ADEA claims based on circumstantial evidence are analyzed under the framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973). *See Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (applying *McDonnell Douglas* burden-shifting framework to ADEA case based on circumstantial evidence). To establish a prima facie case of age discrimination, a plaintiff must show that: "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003)); *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Once a plaintiff establishes a prima facie case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. *Machinchick*, 398 F.3d at 350. This is a burden of production, not persuasion, on the defendant's part, and it "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the [defendant] articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922 (citation omitted). "In determining whether the plaintiff's rebuttal precludes summary judgment, the

**Memorandum Opinion and Order - Page 9**

question is whether the plaintiff has shown that there is a genuine dispute of material fact as to whether this reason was pretextual." *Id.* (internal punctuation and citation omitted). Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

"[A] mere scintilla of evidence of pretext[,] [however,] does not create a genuine dispute of material fact." *Anderson v. Tupelo Regional Airport Auth.*, 568 F. App'x 287, 290 (5th Cir. 2014) (citing *Wyvill v. United Companies Life Ins. Co.*, 22 F.3d 296, 301(5th Cir. 2000)). A plaintiff must present enough competent summary judgment evidence to raise a genuine dispute of material fact that the employer's asserted justification is false, or "prove that the employer's asserted justification is false." *Reeves*, 530 U.S. at 148. As the Supreme Court stated in *Reeves*:

> For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other nondiscriminatory reason for the employer's decision, or if the plaintiff only created a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independence evidence that no discrimination had occurred.

*Id.* (citation omitted).

### B. UPS's Motion for Summary Judgment

UPS contends that it is entitled to summary judgment on Wilkey's ADEA claim because she "has produced no competent summary judgment evidence to support her claim that 'but for' her age[,] she would not have been terminated for dishonesty in light of UPS's Integrity Policy." Def.'s Summ. J. Br. 25 (Doc. 18). In response, Wilkey argues that UPS selectively enforced work rules to the detriment of older workers, that Stucker knew the Surveys were being falsified, that Stucker asked her when she was planning to retire, and that at some unidentified time after she

was terminated, a water jug she had left behind at the facility was placed next to a dinosaur outside the office of human resources.

For summary judgment purposes, UPS concedes that Wilkey has established a prima facie case. UPS, however, articulates a legitimate, nondiscriminatory reason for her termination. The record makes clear that UPS's stated reason for terminating Wilkey was her dishonesty in falsifying Surveys by instructing Banks to complete the Surveys for Wilkey's subordinates, and that this conduct violated its Integrity Policy. *See* Def.'s Summ. J. App. 7; *see also* Def.'s Summ. J. Br. 11:

> Wilkey was terminated by UPS for dishonesty in falsifying UPS documents, i.e., the Employee Engagement Surveys that were supposed to be completed by employees. Wilkey instructed a subordinate to complete Surveys for Wilkey's employees thereby tainting the Survey data and procedures, which actions violated UPS's Integrity Policy. Furthermore, Wilkey admitted to this misconduct.

UPS further notes that "Wilkey even logged into the Survey database to give part-time supervisor Tunisia Banks access in such a way that she would not be identified as the employee completing the Surveys." *Id.* (citation omitted).

The court concludes that UPS's explanation constitutes a legitimate, nondiscriminatory reason for Wilkey's termination. *See Rachid*, 376 F.3d at 313 ("[V]iolating a non-discriminatory company policy is adequate grounds for termination[.]"); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); W*atts v. L-3 Comm'ns Corp.*, 2013 WL 3789868, at *6 (N.D. Tex. July 22, 2013) (Fish, J.) ("A violation of a company policy is unquestionably a legitimate, nondiscriminatory reason for termination.") (collecting cases).[3]

---

[3] In response, Wilkey contends that UPS's proffered legitimate, nondiscriminatory reason for terminating her is "neither neutral nor nondiscriminatory." Pl.'s Resp. Br. 13 (Doc. 23-1). The court rejects this contention. First, Wilkey fails to provide any explanation to support this bald assertion. Second, the case she cites, *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004), is easily distinguished. In *Patrick*, the Fifth Circuit held that the statement that an employee was "not sufficiently suited" for a position was not specific enough to constitute a "legitimate, nondiscriminatory reason." 394 F.3d at 316-17. "[J]ustifying an adverse

**Memorandum Opinion and Order - Page 11**

Wilkey contends that there is a genuine dispute of material fact with respect to whether UPS's stated reason for her termination is a pretext for intentional age discrimination. As a threshold matter, to satisfy her burden of establishing that UPS's reason for terminating her was pretextual, Wilkey relies heavily on her own declaration, which consists of many conclusory statements aimed at rebutting UPS's stated reason for her termination, as well as speculative assertions including that is was common knowledge that the Surveys were inaccurate and that she was terminated because of her age. *See* Pl.'s Summ. J. App. 3-5 (Declaration of Donise Wilkey) ("Wilkey Decl."). As previously stated, and as noted below, conclusory statements and speculation are not competent evidence to defeat summary judgment. *See Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533.

Wilkey first attempts to establish pretext by arguing that UPS failed to adhere to the Integrity Policy and only selectively enforced it "against older long term employees." Pl.'s Summ. J. App. 4, Wilkey Decl. ¶ 17. According to Wilkey, "integrity for UPS is as flexible as the wind." *Id.* ¶ 18. In an attempt to provide evidentiary support for her conclusory statements, Wilkey has submitted declarations of former and current UPS employees to show that other employees who engaged in dishonest conduct or violated UPS's policies were not terminated. *See* Pl.'s Summ. J. App. 6-15.[4]

---

employment decision by offering a content-less and nonspecific statement, such as that a candidate is not 'sufficiently suited' for the position, is not specific enough to meet a defendant employer's burden of production under *McDonnell Douglas*. It is, at bottom, a non-reason." *Id.* at 317. Unlike in *Patrick*, UPS has provided a specific and concrete explanation for why it terminated Wilkey, namely, for her dishonesty in violating its Integrity Policy by instructing a subordinate to complete the Surveys for other employees under her supervision. Finally, to the extent Wilkey appears to suggest that she need not rebut UPS's nondiscriminatory reason because fact issues exist as to whether she knew of the Integrity Policy, UPS's burden is only one of production, and, at this point, it "need not persuade the court that it was actually motivated by the proffered reasons." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

[4] *See* Pl.'s Summ. J. App. 6-15 (Declarations of Shannon Hanson, Engleburg Toney, Josh Vanhoozer, and Lindsey Cox). UPS objects to the court's consideration of the Declarations of Josh Vanhoozer and Lindsey

"In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Berquist*, 500 F.3d at 353; *see also Gilbert v. Brookshire Grocery Co.*, 354 F. App'x 953, 954 (5th Cir. 2009) ("[F]or employees to be considered similarly situated, an employee alleging discrimination must show that the employees' circumstances, including their misconduct, were nearly identical."). To meet this requirement, "'the alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decisions,' taking into consideration such factors as the employee's job titles, work location with the company, supervisors, and alleged misconduct." *Davis v. Farmers Ins. Exch.*, 2009 WL 1065159, at *5 (N.D. Tex. Apr. 17, 2009) (McBryde, J.), *aff'd*, 372 F. App'x 517 (5th Cir. 2010) (quoting *Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004)); *see also Wyvill*, 212 F.3d at 302. Additional factors used to determine whether putative comparators are similarly situated are whether the employees being compared shared the same supervisor or had their employment status determined by the same person and whether the violations of the comparators occurred in the same time frame, or were too remote in time to be deemed similarly situated. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Applying the foregoing factors to Wilkey's proffered comparators, the court concludes that she has failed to show that any of the identified UPS employees (former and current) were similarly situated and treated differently under nearly identical circumstances. Specifically, the alleged conduct of the proffered comparators was remote in time, involved different managers or decisionmakers, or involved different conduct. Further, Wilkey does not attempt in her response

---

Cox because neither of these individuals was disclosed to UPS in Wilkey's initial disclosures or in subsequent discovery. This objection is **overruled as moot**, given the court's conclusion, below, that neither Declaration supports her claim that the Integrity Policy was selectively enforced to the detriment of older workers.

brief to satisfy the Fifth Circuit's standard for similarly situated comparators. Instead, she argues generally that other employees engaged in acts she considers integrity violations and that UPS did not terminate them. Wilkey does not provide the ages of those employees that she states were treated more favorably than she was. As a result, Wilkey fails to show that she was treated less favorably than similarly situated employees outside her protected class. *See Boyd v. Dallas Indep. Sch. Dist.*, 2010 WL 1687665, at *6 and n.57 (N.D. Tex. Apr. 27, 2010) (Lynn, J.) (citation omitted) (employee failed to show she was treated less favorably than proffered comparators based on her age when she did not produce evidence of the ages of the employees allegedly treated more favorably).[5]

In addition, as UPS correctly notes in its reply brief, Wilkey ignores Lindsey, a similarly situated comparator:

> Lindsey held the same position as Wilkey and was terminated on the same day, March 14, 2014, for the exact same reason as Wilkey—instructing a subordinate to falsify Employee Engagement Surverys. Although Lindsey at age 47 was in the protected age category, he was some eight years younger than Wilkey[,] and the decision to terminate him was made by the same managers who terminated Wilkey. . . . These facts further undermine Wilkey's claim that her termination was a pretext for age discrimination.

Def.'s Reply 10 (Doc. 24).

Wilkey also attempts to prove pretext by asserting that Stucker knew of her plan to have Banks complete the Surveys and stated, "I don't care how you get them done. Just get them done." *Id.* ¶ 5. Wilkey, however, provides no argument or evidence generally that this statement somehow exonerates her from her violation of the Policy, evidences intentional age discrimination, or is

---

[5] Further, Wilkey has not identified any employee of which she has personal knowledge who directed a subordinate to falsify Surveys, whose conduct was reported to upper management, and who was not terminated.

related to her termination. It is undisputed that Korn, not Stucker, made the decision to terminate Wilkey.

Wilkey further argues that Stucker's questioning her about when she was going to retire demonstrates, in conjunction with her prima facie case, that the asserted reason for her termination is pretextual. The court disagrees. "[I]nquiry into [an employee's] retirement plans is not evidence of unlawful conduct" under the ADEA. *Mayes v. Kelly Servs., Inc.*, 2004 WL 533951, at *4 (N.D. Tex. 2004), *aff'd*, 108 F. App'x 932 (5th Cir. 2004); *see also Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993) (questions by supervisor about plaintiff's retirement plans and those of team members "cannot be said to represent . . . a discriminatory intent" by the supervisor). In addition, the Supreme Court has made clear that an employee's age and her seniority are not synonymous. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1991) ("[A]n employee's age is analytically distinct from [her] years of service" and the fact that an employee is treated differently based on seniority is not "age-based.").[6]

Wilkey also seeks to establish pretext by stating in her declaration that after she was terminated, "[her] water jug was put on a dinosaur outside the H.R. office." Pl.'s Summ J. App. 5, Wilkey Decl. ¶ 22. This argument is baseless and has no support in the record.

Attached to Wilkey's declaration is a photograph. From what the court can glean from the photograph, it appears to show a small container placed next to what appears to be a toy or perhaps a blow-up dinosaur. Nothing in the record indicates who took the photograph, when it was taken,

---

[6] Even were Stucker's questions about her retirement relevant, there is no evidence that these comments reflected discriminatory animus based on age or related in any way to her termination. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) ("Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct . . .[,] a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."). It is undisputed that Korn, not Stucker, was responsible for the decision to terminate Wilkey, and there is no evidence Stucker had influence over the decisionmaker. *See supra* note 2.

**Memorandum Opinion and Order - Page 15**

or how or why it was taken. The photograph, according to Wilkey's handwritten notations, was taken on May 5, 2015, approximately fourteen months after her termination. Apparently, Wilkey wants the court to draw an inference that the photograph is probative of intentional age discrimination. There is no evidence in the record that Korn, the person who made the decision to terminate Wilkey after consulting with the Director of Human Resources and the District Director of Security, was aware of her water container being next to the dinosaur. Further, the mere placement of the water container next to the dinosaur is simply not reasonably susceptible to the interpretation Wilkey seeks to ascribe to it. On the scant record before it, and with the above-described gaps in crucial information concerning the photograph, and given the fourteen months that elapsed between her termination and the purported date on which the photograph was taken, this is a baseless and unreasonable inference to draw.

Contrary to her previous handwritten statement submitted to UPS admitting to her actions in falsifying Surveys and stating that she knew her actions were "not the right thing to do and [she] made a bad decision[,] (*see* Def.'s Summ. J. App. 221-23), Wilkey testified in her deposition that she did not know that falsifying records was a terminable offense and that UPS should have disciplined her less harshly based on her exemplary previous record with the company. The court is not persuaded by this argument, however, as the only question before the court is whether UPS's decision to terminate Wilkey was because of intentional age discrimination. As stated by the Fifth Circuit:

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Moss*, 610 F.3d at 926 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir.1988)). In short, whether UPS should have disciplined Wilkey differently for falsifying records in light of her previous work history is not relevant to this court's analysis, as an employer may manage its affairs as it sees fit, as long as its methods are nondiscriminatory.[7]

In sum, viewing all evidence in the light most favorable to Wilkey as the nonmovant, the court concludes that she has failed to raise a genuine dispute of material fact that UPS's nondiscriminatory reason for firing her—violating company policy—was a pretext for age discrimination, and that "but for" Wilkey's age, she would not have been terminated. Accordingly, there is no genuine dispute of material fact as to Wilkey's ADEA claim, and UPS is entitled to judgment as a matter of law on this claim.

## IV. Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists with respect to Wilkey's claim of age discrimination under the ADEA. UPS is, therefore, entitled to judgment as a matter of law on this claim. Accordingly, the court **grants** Defendant United Parcel Service, Inc.'s Motion for Summary Judgment (Doc. 17); and **dismisses with prejudice** this action. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58(a).

**It is so ordered** this 29th day of January, 2018.

Sam A. Lindsay
United States District Judge

---

[7] Some may perceive UPS's decision to terminate Wilkey as unduly harsh in light of her many years of service and her lack of previous disciplinary actions. Notwithstanding these perceptions, the court determines that there is no evidence of intentional age discrimination, which is the only issue before it.